**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

MARK SHALLAL,                                      )
                                                   )
                    Plaintiff,                     )
                                                   )
          v.                                       )        Civil Action No. 07-2154 (RCL)
                                                   )
ROBERT GATES, et. al.                              )
Secretary of the Defense                           )
                                                   )
                    Defendants.                    )
_____)

**MEMORANDUM IN SUPPORT OF REPLY TO PLAINTIFF'S OPPOSITION TO**
**FEDERAL DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

Federal Defendants hereby file this reply to Plaintiffs' Opposition to Federal Defendants'

Motion to Dismiss.  The Plaintiff has received eligibility for a security clearance and his claim is

thus rendered moot.  As a result, the Court lacks jurisdiction to decide the issues.

Plaintiff's complaint listed his name as "Mark Shallal."  (See Compl.)  In his complaint,

Plaintiff brought only Count VII, alleging the denial of substantive and procedural due process

related to his application for a security clearance, against the federal Defendants.  (Compl.)

Federal Defendants moved to dismiss under Fed. R.Civ. P. 12(b)(1) after no record of an

application for "Mark Shallal" was found.  (Fed. Def.'s Motion to Dismiss, R. # 13.)  Plaintiff

filed his opposition on April 25, 2008 and attached as an exhibit a letter addressed to "Manhal

Sabah Shallal," apparently Plaintiff's actual legal name.  (Pl.'s Opp. to MTD, R. # 15.)  Upon

discovery of this inconsistency, Defendants began a new search for records under the correct

name.  Federal Defendants discovered that Plaintiff's eligibility for a security clearance was

granted on April 15, 2008, six days after their Motion to Dismiss was filed.  (Def. Ex. 1,

Declaration of Edna Chrisman (hereinafter "Chrisman Dec."))

**ARGUMENT**

**I.    PLAINTIFFS' CLAIM HAS BEEN RENDERED MOOT**

**A.  LEGAL STANDARDS**

Article III of the Constitution restricts federal court jurisdiction to actual "Cases" and

"Controversies." U.S. Const. art. III, § 2; Allen v. Wright, 468 U.S. 737, 750 (1984); Valley

Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 471

(1982); Flast v. Cohen, 392 U.S. 83, 94 (1968).  The case or controversy requirement has given

rise to "several doctrines . . . 'founded in concern about the proper - and properly limited - role

of the courts in a democratic society.'" Allen, 468 U.S. at 750 (quoting Warth v. Seldin, 422 U.S.

490, 498 (1975)). These doctrines include justiciability, political question, standing, ripeness,

and mootness. Walker v. Cheney, 230 F. Supp 2d 51 (D.D.C. 2002).

A case is moot when it "has lost its character as a present, live controversy of the kind

that must exist if [the court] is to avoid advisory opinions on abstract questions of law."

Schering Corp. v. Shalala, 995 F.2d 1103, 1106 (D.C. Cir. 1993).  The mootness doctrine "limits

federal courts to deciding 'actual, ongoing controversies.'  'Even where the litigation poses a

live controversy when filed, the doctrine requires a federal court to refrain from deciding it if

'events have so transpired that the decision will neither presently affect the parties' rights nor

have a more-than-speculative chance of affecting them in the future.'"  Clarke v. United States,

915 F.2d 699, 701 (D.C. Cir. 1990) (quoting Transwestern Pipeline Co. v. FERC, 897 F.2d 570,

575 (D.C. Cir. 1990)).  This limitation continues "'through all stages of federal judicial

2

proceedings, trial and appellate.'" <u>Id.</u> (quoting <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 477 (1990)).

Mootness is a jurisdictional question, one which a federal court must resolve before assuming jurisdiction.  <u>North Carolina v. Rice</u>, 404 U.S. 244, 246 (1971).  The central question of all mootness problems is whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.  13A Wright, Miller & Cooper, Federal Practice and Procedure § 3533.3 (1984).  The issue of mootness depends upon whether the court can grant "any effectual relief."  <u>Church of Scientology v. United States</u>, 506 U.S. 9, 12 (1992).

### B.    PLAINTIFF IS ELIGIBLE FOR A SECURITY CLEARANCE

Plaintiff's allegation against federal Defendants was based upon the alleged deprivation of a liberty interest based upon the Fifth Amendment to the Constitution.  (Compl. ¶¶ 79-86.) Procedural due process is only required when an individual is deprived of a property or liberty interest.  <u>See</u> <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 569-70 (1972).   Plaintiff is now eligible for a Secret clearance, therefore notice and opportunity to respond to its denial is no longer needed. (Chrisman Dec.)  While his interim Secret clearance was withdrawn, at no time was Plaintiff denied a final determination of his security clearance eligibility.  (<u>Id.</u>)  Processing of Plaintiff's final determination ceased in November 2006 when he was terminated by L-3 Communications and Plaintiff no longer required access to classified material.  (<u>Id.</u>)  Plaintiff subsequently applied for a security clearance in May 2007 through Northrup Grumman Mission Systems.  (<u>Id.</u>)  While again declined an interim clearance, the final determination found Plaintiff eligible for a Secret clearance.  (<u>Id.</u>)

Plaintiff's argument that there is a "profound factual dispute" is the result of his own failure to comply with Fed. R.Civ. P. 10(a) which requires that "the complaint must name all parties." Fed. R.Civ. P. 10(a). At the time federal Defendants filed their Motion to Dismiss, they believed that Plaintiff's name, as stated in the caption of the complaint, was "Mark Shallal." Regardless of the confusion caused by Plaintiff's failure to use his real name in the complaint, the fact remains that he is now eligible for a Secret level security clearance should he require it in the course of employment. Federal Defendants are not responsible for the actions of Plaintiff's private employers based upon the declination of an interim security clearance. Plaintiff's own exhibit to his opposition does not reflect a denial of due process or even that his application had received a final determination. (Pl's Opp., Ex. 1.) The lack of a case or controversy upon which this Court may act deprives the Court of the ability to grant effective relief and thus, of jurisdiction. Church of Scientology, 506 U.S. at 12.

To the extent that Plaintiff complains about the due process rights of contract employees who apply for security clearances, he also fails to state a claim for which relief can be granted. Plaintiff mistakenly claims that contract employee applicants do not have the right to appeal the final denial of a security clearance. (Pl.'s Opp. at 11.) Department of Defense Directive 5220.6, Defense Industrial Personnel Security Clearance Review Program ("DoDD 5220.6"), establishes procedures that provide contract employees with extensive due process rights following a "final unfavorable clearance decision." (Def. Ex. 2, DoDD 5220.6, ¶ 4.3.) As Plaintiff's exhibit states, only his interim eligibility was withdrawn and a final determination was still pending. (Pl.'s Opp., Ex. 1.) Additionally, no final determination was ever made on Plaintiff's Titan application because his employment with Titan (L-3) was terminated and thus Plaintiff no longer required

4

access to classified information. (Chrisman Dec. ¶ 5.) The DoD Directive does not provide an appeal process for withdrawals based upon the applicant's need to access information or for withdrawals of interim clearances. (DoDD 5220.6 ¶ 2.5) Plaintiff cites no case establishing a cause of action based upon the process rights for applicants for whom a final determination has not been made. While due process rights exist for adverse final eligibility determinations, no such adverse determination was ever made on Plaintiff's application.

### III. PLAINTIFF FAILED TO COMPLY WITH THE QUI TAM PROVISIONS OF THE FALSE CLAIMS ACT

Plaintiff's Opposition reasserts his claim in Count III, which purports to bring a *Qui Tam* claim on behalf of the government. (Pl's. Opp. at 20.) Plaintiff, however, does not address his failure to comply with the requirements of 31 U.S.C. §3730. Plaintiff has failed to bring the action in the name of the government and has instead included the named federal Defendants in their official capacity. Additionally, the Complaint was not filed in camera, nor was it served, along with "all material evidence and information the person possesses," upon the government in accordance with the Federal Rules of Civil Procedure. 31 U.S.C. §3730. Thus, this claim should also be dismissed.

### V. PLAINTIFF FAILED TO OPPOSE DISMISSAL OF ALL OTHER CLAIMS

To the extent Plaintiff failed to oppose federal Defendant's Motion to Dismiss, this Court should, in accordance with its own local rules, treat the motion as conceded and dismiss Plaintiff's claims against federal Defendants. (LCvR 7(b).) Plaintiff failed to oppose Defendants' motion to dismiss Counts I and II to the extent that Plaintiff sought relief as a third party beneficiary or subcontractor of a contract between the United States and Titan. Plaintiff

5

also failed to oppose Defendants' motion to dismiss Count VI of the Plaintiff's Complaint to the

extent it seeks relief under the Alien Tort Claims Act, the Hague Convention, and the War

Crimes Act.   Accordingly, these claims should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's claims against the federal Defendants should be

dismissed in their entirety.

Respectfully submitted,

__/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

__/s/_____
LANNY J. ACOSTA, JR.
Special Assistant United States Attorney
555 Fourth St., N.W.,  Room E4408
Washington, D.C. 20530
202-353-9895

Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MARK SHALLAL,                    )
                                 )
    *Plaintiff,*               )
                                 )
    v.                         )    **Civil Action No. 07-2154**
                                 )
ROBERT GATES, et al.,            )
                                 )
    *Defendants.*              )
                                 )

## DECLARATION OF EDNA M. CHRISMAN

I, Edna M. Chrisman, pursuant to 28 U.S.C. § 1746 do hereby declare as follows:

1.    I am a Supervisory Personnel Security Specialist for the Defense Security Service,

Defense Industrial Security Clearance Office (DISCO), which is located in Columbus, Ohio and

is a Defense Agency of the U.S. Department of Defense (DoD). The Under Secretary of Defense

for Intelligence provides authority, direction and control over the agency. I make this declaration

based on my personal knowledge. I have served in this capacity since January 8, 2006. I am

responsible for supervising and managing personnel who review Reports for Adjudication (RFA)

and make security clearance eligibility determinations for Industrial Contractors.

2.    In the course of my duties, I have access to the Joint Personnel Adjudication System

(JPAS), Office of Personnel Management-Security Suitability Investigations Index (SII) and

Defense Central Index of Investigations (DCII). JPAS is the system of record containing

clearance eligibility determinations for personnel affiliated with the Department of Defense. I

conducted a search of JPAS, SII and DCII by entering the Social Security Number (SSN) 373-

21-1789 into the system and the database records for the subject person, Manhal Sabal Shallal, were returned.

3.    JPAS history reflects that a Research action was received on August 2, 2004, but does not identify the submitting facility. The Research action was assigned to an adjudicator on September 29, 2004. JPAS does not maintain a history of these types of actions so there is no indication what the submitting facility was requesting, nor the adjudicators' response. A second Research action was received on October 13, 2005, submitted by SM Consulting Incorporated, Federal Division, 1835 Alexander Bell Drive, Suite 240, Reston, Virginia 20191. The action was assigned to an adjudicator on December 13, 2005. JPAS does not maintain a history of these types of actions so there is no indication what the submitting facility was requesting, nor the adjudicators' response.

4.    SII reflects a National Agency Check with Local Agency and Credit Checks (NACLC) investigation which closed on March 18, 2005. The NACLC is the minimum DoD investigative requirement to determine eligibility for access to Confidential and Secret information. JPAS indicates that the investigation was received in DISCO and assigned to an adjudicator on August 16, 2005. There is no indication in JPAS that a final eligibility determination was made. A Reimbursable Suitability Investigation (RSI) was scheduled by the Office of Personnel Management (OPM) on November 8, 2005, and was closed on November 15, 2006. JPAS does not maintain a record of receipt of RSIs. Therefore, there is no way to determine if the RSI was received in DISCO.

5.    The subject received an interim (temporary) Secret declination on April 20, 2006, based on personal conduct, financial considerations, and criminal conduct. His employment with L-3 Communications (CaGE 3K3N0), 1900 Campus Commons Drive, Reston, Virginia, 20191 was separated on November 28, 2007. On November 30, 2006, JPAS was updated to reflect Loss of

Jurisdiction eligibility as a result of the employment separation. His affiliation with L-3 Communications is reflected as an Army Linguist.

6.      On May 7, 2007, Northrup Grumman Mission Systems (CaGE 1B054), 12900 Federal Systems Park Drive, Fairfax, Virginia, 22033-4411 submitted an Electronic Questionnaire for Investigations Processing (eQIP) to initiate a NACLC investigation for Mr. Shallal. His affiliation with Northrup Grumman Mission Systems is reflected as a Contractor. On May 10, 2007, an interim declination eligibility determination was posted in JPAS. A message was sent in JPAS to Northrup Grumman Mission Systems on July 26, 2007, advising them that OPM had rejected the investigative request due to an untimely submission of fingerprint cards and that if the investigation was still required they needed to resubmit their request. On October 29, 2007, Northrup Grumman Mission Systems resubmitted an eQIP to initiate a NACLC investigation. On October 31, 2007, a message was sent in JPAS to Northrup Grumman Mission Systems advising that an interim secret eligibility determination could not be issued for the subject and that action was being taken to process the request for a final eligibility determination. The NACLC investigation was closed by OPM on April 2, 2008, received in DISCO on April 9, 2008, and assigned to an adjudicator for adjudication on April 15, 2008. JPAS was updated with a Secret eligibility determination on April 15, 2008. JPAS reflects that the subject separated from Northrup Grumman Mission Systems on March 5, 2008. The subject is currently eligible for a Secret clearance for the next two years from April 15, 2008, if he holds a position that requires a Secret clearance.

1    I declare under penalty of perjury that the foregoing is true and correct to the best of my

2    knowledge and belief.

3

4

5    Executed this $3\gamma^{c4}$ day of May, 2008 in Columbus, Ohio.

6

7    *Edna M. Chrisman*
     **EDNA M. CHRISMAN**
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

Exhibit 2



Department of Defense
# DIRECTIVE

**NUMBER** 5220.6
January 2, 1992

Administrative Reissuance Incorporating Through Change 4, April 20, 1999
GC, DoD

SUBJECT:  Defense Industrial Personnel Security Clearance Review Program

References:  (a)  DoD Directive 5220.6, subject as above, August 12, 1985 (hereby canceled)
    (b)  DoD 5200.2-R, "Department of Defense Personnel Security Program," January 1987, authorized by DoD Directive 5200.2, December 20, 1979
    (c)  Section 1001 of title 18, United States Code
    (d)  Section 101 et seq. of title 28, United States Code

## 1. REISSUANCE AND PURPOSE

This Directive reissues reference (a) to update policy, responsibilities, and procedures of the Defense Industrial Personnel Security Clearance Review Program implementing enclosure 1.

## 2. APPLICABILITY AND SCOPE

This Directive:

2.1.  Applies to the Office of the Secretary of Defense, the Military Departments, the Chairman of the Joint Chiefs of Staff and the Joint Staff, the Inspector General of the Department of Defense (IG, DoD), and the Defense Agencies (hereafter referred to collectively as "the DoD Components").

2.2.  By mutual agreement, also extends to other Federal Agencies that include:

  2.2.1.  Department of Agriculture.

2.2.2.  Department of Commerce.

2.2.3.  Department of Interior.

2.2.4.  Department of Justice.

2.2.5.  Department of Labor.

2.2.6.  Department of State.

2.2.7.  Department of Transportation.

2.2.8.  Department of Treasury.

2.2.9.  Environmental Protection Agency.

2.2.10.  Federal Emergency Management Agency.

2.2.11.  Federal Reserve System.

2.2.12.  General Accounting Office.

2.2.13.  General Services Administration.

2.2.14.  National Aeronautics and Space Administration.

2.2.15.  National Science Foundation.

2.2.16.  Small Business Administration.

2.2.17.  United States Arms Control and Disarmament Agency.

2.2.18.  United States Information Agency.

2.2.19.  United States International Trade Commission.

2.2.20.  United States Trade Representative.

2.3.  Applies to cases that the Defense Industrial Security Clearance Office (DISCO) forwards to the Defense Office of Hearings and Appeals (DOHA), Defense Legal Services Agency for action under this Directive to determine whether it is clearly

*DoDD 5220.6, January 2, 1992*

consistent with the national interest to grant or continue a security clearance for the applicant.

2.4.  Provides a program that may be extended to other security cases at the direction of the Assistant Secretary of Defense for Command, Control, Communications, and Intelligence (ASD(C3I)).

2.5.  Does not apply to cases in which:

    2.5.1.  A security clearance is withdrawn because the applicant no longer has a need for access to classified information;

    2.5.2.  An interim security clearance is withdrawn by the DISCO during an investigation; or

    2.5.3.  A security clearance is withdrawn for administrative reasons that are without prejudice as to a later determination of whether the grant or continuance of the applicant's security clearance would be clearly consistent with the national interest.

2.6.  Does not apply to cases for access to sensitive compartmented information or a special access program.


3.  <u>DEFINITIONS</u>

3.1.  <u>Applicant</u>.  Any U.S. citizen who holds or requires a security clearance or any immigrant alien who holds or requires a limited access authorization for access to classified information needed in connection with his or her employment in the private sector; any U.S. citizen who is a direct-hire employee or selectee for a position with the North Atlantic Treaty Organization (NATO) and who holds or requires NATO certificates of security clearance or security assurances for access to U.S. or foreign classified information; or any U.S. citizen nominated by the Red Cross or United Service Organizations for assignment with the Military Services overseas.  The term "applicant" does not apply to those U.S. citizens who are seconded to NATO by U.S. Departments and Agencies or to U.S. citizens recruited through such Agencies in response to a request from NATO.

3.2.  <u>Clearance Decision</u>.  A decision made in accordance with this Directive concerning whether it is clearly consistent with the national interest to grant an applicant a security clearance for access to Confidential, Secret, or Top Secret information.  A favorable clearance decision establishes eligibility of the applicant to

be granted a security clearance for access at the level governed by the documented need for such access, and the type of investigation specified for that level in DoD 5200.2-R (reference (b)). An unfavorable clearance decision denies any application for a security clearance and revokes any existing security clearance, thereby preventing access to classified information at any level and the retention of any existing security clearance.

4. <u>POLICY</u>

It is DoD policy that:

    4.1.  All proceedings provided for by this Directive shall be conducted in a fair and impartial manner.

    4.2.  A clearance decision reflects the basis for an ultimate finding as to whether it is clearly consistent with the national interest to grant or continue a security clearance for the applicant.

    4.3.  Except as otherwise provided for by E.O. 10865 (enclosure 1) or this Directive, a final unfavorable clearance decision shall not be made without first providing the applicant with:

        4.3.1.  Notice of specific reasons for the proposed action.

        4.3.2.  An opportunity to respond to the reasons.

        4.3.3.  Notice of the right to a hearing and the opportunity to cross-examine persons providing information adverse to the applicant.

        4.3.4.  Opportunity to present evidence on his or her own behalf, or to be represented by counsel or personal representative.

        4.3.5.  Written notice of final clearance decisions.

        4.3.6.  Notice of appeal procedures.

    4.4.  Actions pursuant to this Directive shall cease upon termination of the applicant's need for access to classified information except in those cases in which:

        4.41.  A hearing has commenced.

4.4.2.  A clearance decision has been issued; or

4.4.3.  The applicant's security clearance was suspended and the applicant provided a written request that the case continue.


5.  RESPONSIBILITIES

5.1.  The Assistant Secretary of Defense for Command, Control, Communications, and Intelligence shall:

5.1.1.  Establish investigative policy and adjudicative standards and oversee their application.

5.1.2.  Coordinate with the General Counsel of the Department of Defense (GC, DoD) on policy affecting clearance decisions.

5.1.3.  Issue clarifying guidance and instructions as needed.

5.2.  The General Counsel of the Department of Defense shall:

5.2.1.  Establish guidance and provide oversight as to legal sufficiency of procedures and standards established by this Directive.

5.2.2.  Establish the organization and composition of the DOHA.

5.2.3.  Designate a civilian attorney to be the Director, DOHA.

5.2.4.  Issue clarifying guidance and instructions as needed.

5.2.5.  Administer the program established by this Directive.

5.2.6.  Issue invitational travel orders in appropriate cases to persons to appear and testify who have provided oral or written statements adverse to the applicant relating to a controverted issue.

5.2.7.  Designate attorneys to be Department Counsels assigned to the DOHA to represent the Government's interest in cases and related matters within the applicability and scope of this Directive.

5.2.8.  Designate attorneys to be Administrative Judges assigned to the DOHA.

5.2.9.  Designate attorneys to be Administrative Judge members of the DOHA Appeal Board.

5.2.10.  Provide for supervision of attorneys and other personnel assigned or attached to the DOHA.

5.2.11.  Develop and implement policy established or coordinated with the GC, DoD, in accordance with this Directive.

5.2.12.  Establish and maintain qualitative and quantitative standards for all work by DOHA employees arising within the applicability and scope of this Directive.

5.2.13.  Ensure that the Administrative Judges and Appeal Board members have the requisite independence to render fair and impartial decisions consistent with DoD policy.

5.2.14.  Provide training, clarify policy, or initiate personnel actions, as appropriate, to ensure that all DOHA decisions are made in accordance with policy, procedures, and standards established by this Directive.

5.2.15.  Provide for maintenance and control of all DOHA records.

5.2.16.  Take actions as provided for in subsection 6.2., below, and the additional procedural guidance in enclosure 3.

5.2.17.  Establish and maintain procedures for timely assignment and completion of cases.

5.2.18.  Issue guidance and instructions, as needed, to fulfill the foregoing responsibilities.

5.2.19.  Designate the Director, DOHA to implement paragraphs 5.2.5. through 5.2.18., above, under general guidance of the GC, DoD.

5.3.  The <u>Heads of the DoD Components</u>  shall provide (from resources available to the designated DoD Component) financing, personnel, personnel spaces, office facilities, and related administrative support required by the DOHA.

5.4.  The <u>ASD(C3I)</u> shall ensure that cases within the scope and applicability of this Directive are referred promptly to the DOHA, as required, and that clearance decisions by the DOHA are acted upon without delay.


6.  <u>PROCEDURES</u>

6.1.  Applicants shall be investigated in accordance with the standards in DoD 5200.2-R (reference (b)).

6.2.  An applicant is required to give, and to authorize others to give, full, frank, and truthful answers to relevant and material questions needed by the DOHA to reach a clearance decision and to otherwise comply with the procedures authorized by this Directive.  The applicant may elect on constitutional or other grounds not to comply; but refusal or failure to furnish or authorize the providing of relevant and material information or otherwise cooperate at, any stage in the investigation or adjudicative process may prevent the DOHA from making a clearance decision.  If an applicant fails or refuses to:

6.2.1.  Provide relevant and material information or to authorize others to provide such information; or

6.2.2.  Proceed in a timely or orderly fashion in accordance with this Directive; or

6.2.3.  Follow directions of an Administrative Judge or the Appeal Board; then the Director, DOHA, or designee, may revoke any security clearance held by the applicant and discontinue case processing.  Requests for resumption of case processing and reinstatement of a security clearance may be approved by the Director, DOHA, only upon a showing of good cause.  If the request is denied, in whole or in part, the decision is final and bars reapplication for a security clearance for 1 year from the date of the revocation.

6.3.  Each clearance decision must be a fair and impartial common sense determination based upon consideration of all the relevant and material information and the pertinent criteria and adjudication policy in enclosure 2, including as appropriate:

6.3.1.  Nature and seriousness of the conduct and surrounding circumstances.

6.3.2.  Frequency and recency of the conduct.

6.3.3.  Age of the applicant.

6.3.4.  Motivation of the applicant, and the extent to which the conduct was negligent, willful, voluntary, or undertaken with knowledge of the consequences involved.

6.3.5.  Absence or presence of rehabilitation.

6.3.6.  Probability that the circumstances or conduct will continue or recur in the future;

6.4.  Whenever there is a reasonable basis for concluding that an applicant's continued access to classified information poses an imminent threat to the national interest, any security clearance held by the applicant may be suspended by the ASD(C3I), with the concurrence of the GC, DoD, pending a final clearance decision. This suspension may be rescinded by the same authorities upon presentation of additional information that conclusively demonstrates that an imminent threat to the national interest no longer exists.  Procedures in enclosure 3 shall be expedited whenever an applicant's security clearance has been suspended pursuant to this subsection.

6.5.  Nothing contained in this Directive shall limit or affect the responsibility and powers of the Secretary of Defense or the head of another Department or Agency to deny or revoke a security clearance when the security of the nation so requires.  Such authority may not be delegated and may be exercised only when the Secretary of Defense or the head of another Department or Agency determines that the hearing procedures and other provisions of this Directive cannot be invoked consistent with the national security.  Such a determination shall be conclusive.

6.6.  Additional procedural guidance is in enclosure 3.

*DoDD 5220.6, January 2, 1992*

7.  <u>EFFECTIVE DATE</u>

This Directive is effective March 16, 1992, except those cases in which a statement of reasons has been issued shall be concluded in accordance with DoD Directive 5220.6 (reference (a)).

Donald J. Atwood
Deputy Secretary of Defense

Enclosures -3
    E1.  Executive Order 10865, "Safeguarding Classified Information Within
       Industry," as amended by Executive Order No. 10909 of January 17, 1961,
       Executive Order No. 11382 of November 28, 1967, and Executive Order No.
       12829 of January 6, 1993"
    E2.  Paragraph 2-200 and Appendix I, DoD 5200.2-R
    E3.  Additional Procedural Guidance

E1.  ENCLOSURE 1

EXECUTIVE ORDER 10865*
SAFEGUARDING CLASSIFIED INFORMATION WITHIN INDUSTRY

Source:  The provisions of Executive Order 10865 of Feb. 20, 1960, appear at 25 FR 1583, 3 CFR 1959-1963 Comp., p. 398, unless otherwise noted.

WHEREAS it is mandatory that the United States protect itself against hostile or destructive activities by preventing unauthorized disclosure of classified information relating to the national defense; and

WHEREAS it is a fundamental principle of our Government to protect the interests of individuals against unreasonable or unwarranted encroachment; and

WHEREAS I find that the provisions and procedures prescribed by this order are necessary to assure the preservation of the integrity of classified defense information and to protect the national interest; and

WHEREAS I find that those provisions and procedures recognize the interests of individuals affected thereby and provide maximum possible safeguards to protect such interest:

NOW, THEREFORE, under and by virtue of the authority vested in me by the Constitution and statutes of the United States, and as President of the United States and as Commander in Chief of the Armed Forces of the United States, it is hereby ordered as follows:

*Executive Order 10865, signed by President Eisenhower on Feb. 20, 1960, is hereby reprinted as amended by Executive Order No. 10909 of January 17, 1961, Executive Order No. 11382 of November 28, 1967, and Executive Order No. 12829 of January 6, 1993.  This is an editorial format prepared by the Directorate for Industrial Security Clearance Review as one convenient source for subsequent changes to Executive Order 10865 and is not intended to be used as a definitive legal authority.  This version incorporates amendments through January 6, 1993, by Presidents Dwight D. Eisenhower, Lyndon B.  Johnson and George Bush.

SECTION 1.  When used in this order, the term "head of a Department" means the Secretary of State, the Secretary of Defense, the Secretary of Transportation, the Secretary of Energy, the Nuclear Regulatory Commission, the Administrator of the National Aeronautics and Space Administration, and, in section 4, the Attorney General.  The term "head of a Department" also means the head of any Department or Agency, including but not limited to those referenced above with whom the Department of Defense makes an agreement to extend regulations prescribed by the Secretary of Defense concerning authorizations for access to classified information pursuant to Executive Order No. 12829.

[Sec. 1 amended by EO 10909 of Jan 17, 1961, 26 FR 508, 3 CFR, 1959-1963 Comp., p. 437; EO 11382 of Nov. 28, 1967, 32 FR 16247, 3 CFR, 1966-1970 Comp., p. 691; EO 12829 of Jan. 6, 1993, 58 FR 3479]

SECTION 2.  An authorization for access to classified information pursuant to Executive Order No. 12829 may be granted by the head of a Department or his designee, including, but not limited to, those officials named in section 8 of this order, to an individual, hereinafter termed an "applicant", for a specific classification category only upon a finding that it is clearly consistent with the national interest to do so.

[Sec. 2 amended by EO 12829 of Jan 6, 1993, 58 F4 3479]

SECTION 3.  Except as provided in section 9 of this order, an authorization for access to a specific classification category may not be finally denied or revoked pursuant to Executive Order 12829 by the head of a Department or his designee, including, but not limited to, those officials named in section 8 of this order, unless the applicant has been given the following:

(1) A written statement of reasons why his access authorization may be denied or revoked, which shall be as comprehensive and detailed as the national security permits.

(2) A reasonable opportunity to reply in writing under oath or affirmation to the statement of reasons.

(3) After he has filed under oath or affirmation a written reply to the statement of reasons, the form and sufficiency of which may be prescribed by regulations issued by the head of the Department concerned, an opportunity to appear personally before the head of the Department concerned or his designee, including, but not limited to, those

officials named in section 8 of this order, for the purpose of supporting his eligibility for access authorization and to present evidence on his behalf.

(4) A reasonable time to prepare for that appearance.

(5) An opportunity to be represented by counsel.

(6) An opportunity to cross-examine persons either orally or through written interrogatories in accordance with section 4 on matters not relating to the characterization in the statement of reasons of any organization or individual other than the applicant.

(7) A written notice of the final decision in his case which, if adverse, shall specify whether the head of the Department or his designee, including, but not limited to, those officials named in section 8 of this order, found for or against him with respect to each allegation in the statement of reasons.

[Sec. 3 amended by EO 12829 of Jan 6, 1993, 58 FR 3479]

SECTION 4.  (a) An applicant shall be afforded an opportunity to cross-examine persons who have made oral or written statements adverse to the applicant relating to a controverted issue except that any such statement may be received and considered without affording such opportunity in the circumstances described in either of the following paragraphs:

(1) The head of the Department supplying the statement certifies that the person who furnished the information is a confidential informant who has been engaged in obtaining intelligence information for the Government and that disclosure of his identity would be substantially harmful to the national interest.

(2) The head of the Department concerned or his special designee for that particular purpose has preliminarily determined, after considering information furnished by the investigative agency involved as to the reliability of the person and the accuracy of the statement concerned, that the statement concerned appears to be reliable and material, and the head of the Department or such special designee has determined that failure to receive and consider such statement would, in view of the level of access sought, be substantially harmful to the national security and that the person who furnished the information cannot appear to testify (A) due to death, severe illness, or similar cause, in which case the identity of the person and the information to

be considered shall be made available to the applicant, or (B) due to some other cause determined by the head of the Department to be good and sufficient.

(b) Whenever procedures under paragraph (1) or (2) of subsection (a) of this section are used (1) the applicant shall be given a summary of the information which shall be as comprehensive and detailed as the national security permits, (2) appropriate consideration shall be accorded to the fact that the applicant did not have an opportunity to cross-examine such person or persons, and (3) a final determination adverse to the applicant shall be made only by the head of the Department based upon his personal review of the case.

SECTION 5.  (a) Records compiled in the regular course of business, or other physical evidence other than investigative reports, may be received and considered subject to rebuttal without authenticating witnesses, provided that such information has been furnished to the Department concerned by an investigative agency pursuant to its responsibilities in connection with assisting the head of the Department concerned to safeguard classified information within industry pursuant to this order.

(b) Records compiled in the regular course of business, or other physical evidence other than investigative reports, relating to a controverted issue which, because they are classified, may not be inspected by the applicant, may be received and considered provided that:  (1) the head of the Department concerned or his special designee for that purpose has made a preliminary determination that such physical evidence appears to be material, (2) the head of the Department concerned or such designee has made a determination that failure to receive and consider such physical evidence would, in view of the level of access sought, be substantially harmful to the national security, and (3) to the extent that the national security permits, a summary or description of such physical evidence is made available to the applicant.  In every such case, information as to the authenticity and accuracy of such physical evidence furnished by the investigative agency involved shall be considered.  In such instances a final determination adverse to the applicant shall be made only by the head of the Department based upon his personal review of the case.

SECTION 6.  The head of a Department of the United States or his representative, may issue, in appropriate cases, invitations and requests to appear and testify in order that the applicant may have the opportunity to cross-examine as provided by this order.  Whenever a witness is so invited or requested to appear and testify at a proceeding and the witness is an officer or employee of the Executive Branch of the Government or a member of the Armed Forces of the United States, and the proceeding involves the activity in connection with which the witness is employed,

travel expenses and per diem are authorized as provided by the Standard Government Travel Regulations or the Joint Travel Regulations, as appropriate.  In all other cases (including non-Government employees as well as officers or employees of the Executive Branch of the Government or members of the Armed Forces of the United states not covered by the foregoing sentence), transportation in kind and reimbursement for actual expenses are authorized in an amount not to exceed the amount payable under Standardized Government Travel Regulations.  An Officer or employee of the Executive Branch of the Government or a member of the Armed Forces of the United States who is invited or requested to appear pursuant to this paragraph shall be deemed to be in the performance of his official duties.  So far as the national security permits, the head of the investigative agency involved shall cooperate with the Secretary, the Administrator, or the head of the other Department or Agency, as the case may be, in identifying persons who have made statements adverse to the applicant and in assisting him in making them available for cross-examination.  If a person so invited is an officer or employee of the Executive Branch of the Government or a member of the Armed Forces of the United States, the head of the Department or Agency concerned shall cooperate in making that person available for cross-examination.

[Sec. 6 amended by EO 10909 of Jan. 17, 1961, 26 FR 508, 3 CFR, 1959-1963 Comp., p. 437; EO 11382 of Nov. 28, 1967, 32 FR 16247, 3 CFR, 1966-1970 Comp., p. 691; EO 12829 of Jan. 6, 1993, 58 FR 3479]

SECTION 7.  Any determination under this order adverse to an applicant shall be a determination in terms of the national interest and shall in no sense be a determination as to the loyalty of the applicant concerned.

SECTION 8.  Except as otherwise specified in the preceding provisions of this order, any authority vested in the head of a Department by this order may be delegated to the deputy of that Department, or the principal assistant to the head of that Department, as the case may be.

[Sec. 8 amended by EO 10909 of Jan 17, 1961, 26 FR 508, 3 CFR, 1959-1963 Comp., p. 437; EO 11382 of Nov. 28, 1967, 32 FR 16247, 3 CFR, 1966-1970 Comp., p. 691; EO 12829 of Jan. 6, 1993, 58 FR 3479]

SECTION 9.  Nothing contained in this order shall be deemed to limit or affect the responsibility and powers of the head of a Department to deny or revoke access to a specific classification category if the security of the nation so requires.  Such authority may not be delegated and may be exercised only when the head of a

Department determines that the procedures prescribed in sections 3, 4, and 5 cannot be invoked consistently with the national security and such determination shall be conclusive.

ENCLOSURE 1

E2.  ENCLOSURE 2

ADJUDICATIVE GUIDELINES FOR DETERMINING ELIGIBILITY
FOR ACCESS TO CLASSIFIED INFORMATION

E2.1.  INTRODUCTION

The following adjudicative guidelines are established for all U.S. Government civilian and military personnel, consultants, contractors, employees of contractors, licensees, certificate holders or grantees and their employees and other individuals who require access to classified information *and/or assignment to sensitive national security positions*.  They apply to persons being considered for initial or continued eligibility *for assignment to sensitive positions and/or* access to classified information, to include *S*ensitive *C*ompartmented *I*nformation *(SCI)* and *S*pecial *A*ccess *P*rograms *(SAPs)* and are to be used by Government Departments and Agencies in all final clearance determinations.

E2.2.  ADJUDICATIVE PROCESS

E2.2.1.  The adjudicative process is an examination of a sufficient period of a person's life to make an affirmative determination that the person is *eligible for a security clearance*.  Eligibility for access to classified information is predicated upon the individual meeting these personnel security guidelines.  The *adjudicative* process is the careful weighing of a number of variables known as the whole person concept.  *Available*, reliable information about the person, past and present, favorable and unfavorable, should be considered in reaching a determination.  In evaluating the relevance of an individual's conduct, the adjudicator should consider the following factors:

E2.2.1.1.  The nature, extent, and seriousness of the conduct*;*

E2.2.1.2.  The circumstances surrounding the conduct, to include knowledgeable participation*;*

E2.2.1.3.  The frequency and recency of the conduct*;*

E2.2.1.4.  The individual's age and maturity at the time of the conduct*;*

E2.2.1.5.  The voluntariness of participation*;*

E2.2.1.6.  The presence or absence of rehabilitation and other pertinent behavioral changes*;*

E2.2.1.7.  The motivation for the conduct*;*

E2.2.1.8.  The potential for pressure, coercion, exploitation, or duress*; and*

E2.2.1.9.  The likelihood of continuation or recurrence*;*

E2.2.2.  Each case must be judged on its own merits*,* and final determination remains the responsibility of the specific Department or Agency.  Any doubt *as to whether* access to classified information *is clearly consistent with national security* will be resolved in favor of the national *security.*

E2.2.3.  The ultimate determination of whether the granting or continuing of eligibility for a security clearance is clearly consistent with the interests of national security must be an overall common sense determination based upon careful consideration of the following*, each of which is to be evaluated in the context of the whole person, as explained further below:*

E2.2.3.1.  *Guideline A:*  Allegiance to the United States

E2.2.3.2.  *Guideline B:*  Foreign influence

E2.2.3.3.  *Guideline C:*  Foreign preference

E2.2.3.4.  *Guideline D:*  Sexual behavior

E2.2.3.5.  *Guideline E:*  Personal conduct

E2.2.3.6.  *Guideline F:*  Financial considerations

E2.2.3.7.  *Guideline G:*  Alcohol consumption

E2.2.3.8.  *Guideline H:*  Drug involvement

E2.2.3.9.  *Guideline I:*  Emotional, mental, and personality disorders

E2.2.3.10.  *Guideline J:*  Criminal conduct

E2.2.3.11.  *Guideline K:*  Security violations

E2.2.3.12.  *Guideline L:*  Outside activities

E2.2.3.13.  *Guideline M:*  Misuse of Information Technology Systems

E2.2.4.  Although adverse information concerning a single criterion may not be sufficient for an unfavorable determination, the individual may be disqualified if available information reflects a recent or recurring pattern of questionable judgment, irresponsibility, or emotionally unstable behavior.  *Notwithstanding, the whole person concept, pursuit of further investigation may be terminated by an appropriate adjudicative agency in the face of reliable, significant, disqualifying, adverse information.*

E2.2.5.  When information of security concern becomes known about an individual who is currently eligible for access to classified information, the adjudicator should consider whether the person:

E2.2.5.1.  Voluntarily reported the information

E2.2.5.2.  *Was truthful and complete in responding to questions;*

E2.2.5.3.  *Sought assistance and followed professional guidance, where appropriate;*

E2.2.5.4.  *Resolved or appears likely to favorably resolve the security concern;*

E2.2.5.5.  *Has demonstrated positive changes in behavior and employment;*

E2.2.5.6.  *Should have his or her access temporarily suspended pending final adjudication of the information.*

E2.2.6.  If after evaluating information of security concern, the adjudicator decides that the information is not serious enough to warrant a recommendation of disapproval or revocation of the security clearance, it may be appropriate to recommend approval with a warning that future incidents of a similar nature may result in revocation of access.

*DoDD 5220.6, January 2, 1992*

Attachments -13
    E2.A1.  GUIDELINE A, Allegiance to the United States
    E2.A2.  GUIDELINE B, Foreign Influence
    E2.A3.  GUIDELINE C, Foreign Preference
    E2.A4.  GUIDELINE D, Sexual Behavior
    E2.A5.  GUIDELINE E, Personal Conduct
    E2.A6.  GUIDELINE F, Financial Considerations
    E2.A7.  GUIDELINE G, Alcohol Consumption
    E2.A8.  GUIDELINE H, Drug Involvement
    E2.A9.  GUIDELINE I, Emotional, Mental, and Personality Disorders
    E2.A10.  GUIDELINE J, Criminal Conduct
    E2.A11.  GUIDELINE K, Security Violations
    E2.A12.  GUIDELINE L, Outside Activities
    E2.A13.  GUIDELINE M, Misuse of Information Technology Systems

E2.A1.  ATTACHMENT 1 TO ENCLOSURE 2

<span style="color:red">GUIDELINE A<br>Allegiance to the United States</span>

E2.A1.1.1.  *The Concern.*  An individual must be of unquestioned allegiance to the United States.  The willingness to safeguard classified information is in doubt if there is any reason to suspect an individuals allegiance to the United States.

E2.A1.1.2.  Conditions that could raise a security concern and may be disqualifying include:

E2.A1.1.2.1.  Involvement in any act of sabotage, espionage, treason, terrorism, sedition, or other act whose aim is to overthrow the Government of the United States or alter the form of Government by unconstitutional means;

E2.A1.1.2.2.  Association or sympathy with persons who are attempting to commit, or who are committing, any of the above acts;

E2.A1.1.2.3.  Association or sympathy with persons or organizations that advocate the overthrow of the United States Government, or any State or subdivision, by force or violence or by other unconstitutional means;

E2.A1.1.2.4.  Involvement in activities which unlawfully advocate or practice the commission of acts of force or violence to prevent others from exercising their rights under the Constitution or laws of the United States or of any State.

E2.A1.1.3.  Conditions that could mitigate security concerns include:

E2.A1.1.3.1.  The individual was unaware of the unlawful aims of the individual or organization and severed ties upon learning of these;

E2.A1.1.3.2.  The individual's involvement was only with the lawful or humanitarian aspects of such an organization;

E2.A1.1.3.3.  Involvement in the above activities occurred for only a short period of time and was attributable to curiosity or academic interest;

E2.A1.1.3.4.  The person has had no recent involvement or association with such activities.

E2.A2.  ATTACHMENT 2 TO ENCLOSURE 2

GUIDELINE B
Foreign Influence

E2.A2.1.1.  *The Concern:*  A security risk may exist when an individual's immediate family, including cohabitants, and other persons to whom he or she may be bound by affection, influence, or obligation *are not* citizens of the United States *or may* be subject to duress.  These situations could create the potential for foreign influence that could result in the compromise of classified information.  Contacts with citizens of other countries or financial interests in other countries are also relevant to security determinations if they make an individual potentially vulnerable to coercion, exploitation, or pressure.

E2.A2.1.2.  Conditions that could raise a security concern and may be disqualifying include:

E2.A2.1.2.1.  An immediate family member, or a person to whom the individual has close ties of affection or obligation, is a citizen of, or resident or present in, a foreign country;

E2.A2.1.2.1.  Sharing living quarters with a person or persons, regardless of their citizenship status, if the potential for adverse foreign influence or duress exists;

E2.A2.1.2.3.  Relatives, cohabitants, or associates who are connected with any foreign government;

E2.A2.1.2.4.  Failing to report, where required, associations with foreign nationals;

E2.A2.1.2.5.  Unauthorized association with a suspected or known collaborator or employee of a foreign intelligence service;

E2.A2.1.2.6.  Conduct which may make the individual vulnerable to coercion, exploitation, or pressure by a foreign government;

E2.A2.1.2.7.  Indications that representatives or nationals from a foreign country are acting to increase the vulnerability of the individual to possible future exploitation, coercion or pressure;

E2.A2.1.2.8.  A substantial financial interest in a country, or in any foreign-owned or -operated business that could make the individual vulnerable to foreign influence.

E2.A2.1.3.  Conditions that could mitigate security concerns include:

E2.A2.1.3.1.  A determination that the immediate family member(s), *(spouse, father, mother, sons, daughters, brothers, sisters),* cohabitant, or associate(s) in question *are not agents of a foreign power or in a position to be exploited by a foreign power in a way that could force the individual to choose between loyalty to the person(s) involved and the United States;*

E2.A2.1.3.2.  Contacts with foreign citizens are the result of official *United States* Government business;

E2.A2.1.3.3.  Contact and correspondence with foreign citizens are casual and infrequent;

E2.A2.1.3.4.  The individual has promptly reported to proper authorities all contacts, requests, or threats from persons or organizations from a foreign country, as required;

E2.A2.1.3.5.  Foreign financial interests are minimal and not sufficient to affect the individual's security responsibilities.

*DoDD 5220.6, January 2, 1992*

E2.A3.  ATTACHMENT 3 TO ENCLOSURE 2

GUIDELINE C
Foreign Preference

E2.A3.1.1.  *The Concern:*  When an individual acts in such a way as to indicate a preference for a foreign country over the United States, then he or she may be prone to provide information or make decisions that are harmful to the interests of the United States.

E2.A3.1.2.  Conditions that could raise a security concern and may be disqualifying include:

E2.A3.1.2.1.  The exercise of dual citizenship;

E2.A3.1.2.2.  Possession and/or use of a foreign passport;

E2.A3.1.2.3.  Military service or a willingness to bear arms for a foreign country;

E2.A3.1.2.4.  Accepting educational, medical, or other benefits, such as retirement and social welfare, from a foreign country;

E2.A3.1.2.5.  Residence in a foreign country to meet citizenship requirements;

E2.A3.1.2.6.  Using foreign citizenship to protect financial or business interests in another country;

E2.A3.1.2.7.  Seeking or holding political office in the foreign country;

E2.A3.1.2.8.  Voting in foreign elections; and

E2.A3.1.2.9.  Performing or attempting to perform duties, or otherwise acting, so as to serve the interests of another government in preference to the interests of the United States.

E2.A3.1.3.  Conditions that could mitigate security concerns include:

E2.A3.1.3.1.  Dual citizenship is based solely on parents' citizenship or birth in a foreign country;

E2.A3.1.3.2.  Indicators of possible foreign preference (e.g., foreign military service) occurred before obtaining United States citizenship;

E2.A3.1.3.3.  Activity is sanctioned by the United States;

E2.A3.1.3.4.  Individual has expressed a willingness to renounce dual citizenship.

*DoDD 5220.6, January 2, 1992*

E2.A4.  ATTACHMENT 4 TO ENCLOSURE 2

GUIDELINE D
Sexual Behavior

E2.A4.1.1.  *The Concern:*  Sexual behavior is a security concern if it involves a criminal offense, indicates a personality or emotional disorder, *may subject* the individual *to coercion, exploitation, or duress* or reflects lack of judgment or discretion.[1]  Sexual orientation or preference may not be used as a basis for or a disqualifying factor in determining a person's eligibility for a security clearance.

E2.A4.1.2.  Conditions that could raise a security concern and may be disqualifying include:

E2.A4.1.2.1.  Sexual behavior of a criminal nature, whether or not the individual has been prosecuted;

E2.A4.1.2.2.  Compulsive or addictive sexual behavior when the person is unable to stop a pattern of self-destructive or high-risk behavior or that which is symptomatic of a personality disorder;

E2.A4.1.2.3.  Sexual behavior that causes an individual to be vulnerable *to coercion, exploitation, or duress*;

E2.A4.1.2.4.  Sexual behavior of a public nature and/or that which reflects lack of discretion or judgment.

E2.A4.1.3.  Conditions that could mitigate security concerns include:

E2.A4.1.3.1.  The behavior occurred during or prior to adolescence and there is no evidence of subsequent conduct of a similar nature;

E2.A4.1.3.2.  The behavior was not recent and there is no evidence of subsequent conduct of a similar nature;

E2.A4.1.3.3.  There is no other evidence of questionable judgment, irresponsibility, or emotional instability;

[1] The adjudicator should also consider guidelines pertaining to criminal conduct (*Guideline J*) *and* emotional, mental, and personality disorders (*Guideline* I) in determining how to resolve the security concerns raised by sexual behavior.

*DoDD 5220.6, January 2, 1992*

E2.A4.1.3.4.  The behavior no longer serves as a basis *for coercion, exploitation, or duress*.

*DoDD 5220.6, January 2, 1992*

### E2.A5.  ATTACHMENT 5 TO ENCLOSURE 2

### GUIDELINE E
### PERSONAL CONDUCT

E2.A5.1.1.  *The Concern*:  Conduct involving questionable judgment, untrustworthiness, unreliability, *lack of candor, dishonesty,* or unwillingness to comply with rules and regulations could indicate that the person may not properly safeguard classified information.  *The following will normally result in an unfavorable clearance action or administrative termination of further processing for clearance eligibility:*

E2.A5.1.1.1.  Refusal to undergo or cooperate with required security processing, including medical and psychological testing; or

E2.A5.1.1.2.  Refusal to complete required security forms, releases, or provide full, frank and truthful answers to lawful questions of investigators, security officials or other official representatives in connection with a personnel security or trustworthiness determination.

E2.A5.1.2.  Conditions that could raise a security concern and may be disqualifying also include:

E2.A5.1.2.1.  Reliable, unfavorable information provided by associates, employers, coworkers, neighbors, and other acquaintances;

E2.A5.1.2.2.  The deliberate omission, concealment, or falsification of relevant and material facts from any personnel security questionnaire, personal history statement, or similar form used to conduct investigations, determine employment qualifications, award benefits or status, determine security clearance eligibility or trustworthiness, or award fiduciary responsibilities;

E2.A5.1.2.3.  Deliberately providing false or misleading information concerning relevant and material matters to an investigator, security official, competent medical authority, or other official representative in connection with a personnel security or trustworthiness determination;

E2.A5.1.2.4.  Personal conduct or concealment of information that increases an individual's vulnerability to coercion, exploitation or *duress, such as engaging in activities which, if known, may affect the person's personal, professional, or community standing or render the person susceptible to blackmail;*

E2.A5.1.2.5.  A pattern of dishonesty or rule violations, *including violation of any written or recorded agreement made between the individual and the agency;*

E2.A5.1.2.6.  Association with persons involved in criminal activity.

E2.A5.1.3.  Conditions that could mitigate security concerns include:

E2.A5.1.3.1.  The information was unsubstantiated or not pertinent to a determination of judgment, trustworthiness, or reliability;

E2.A5.1.3.2.  The falsification was an isolated incident, was not recent, and the individual has subsequently provided correct information voluntarily;

E2.A5.1.3.3.  The individual made prompt, good-faith efforts to correct the falsification before being confronted with the facts;

E2.A5.1.3.4.  Omission of material facts was caused or significantly contributed to by improper or inadequate advice of authorized personnel, and the previously omitted information was promptly and fully provided;

E2.A5.1.3.5.  The individual has taken positive steps to significantly reduce or eliminate vulnerability to coercion, exploitation, or *duress*;

E2.A5.1.3.6.  A refusal to cooperate was based on advice from legal counsel or other officials that the individual was not required to comply with security processing requirements and, upon being made aware of the requirement, fully and truthfully provided the requested information;

E2.A5.1.3.7.  Association with persons involved in criminal activities has ceased.

*DoDD 5220.6, January 2, 1992*

E2.A6.  ATTACHMENT 6 TO ENCLOSURE 2

GUIDELINE F
Financial Considerations

E2.A6.1.1.  *The Concern*:  An individual who is financially overextended is at risk of having to engage in illegal acts to generate funds.  Unexplained affluence is often linked to proceeds from financially profitable criminal acts.

E2.A6.1.2.  Conditions that could raise a security concern and may be disqualifying include:

E2.A6.1.2.1.  A history of not meeting financial obligations;

E2.A6.1.2.2.  Deceptive or illegal financial practices such as embezzlement, employee theft, check fraud, income tax evasion, expense account fraud, filing deceptive loan statements, and other intentional financial breaches of trust;

E2.A6.1.2.3.  Inability or unwillingness to satisfy debts;

E2.A6.1.2.4.  Unexplained affluence;

E2.A6.1.2.5.  Financial problems that are linked to gambling, drug abuse, alcoholism, or other issues of security concern.

E2.A6.1.3.  Conditions that could mitigate security concerns include:

E2.A6.1.3.1.  The behavior was not recent;

E2.A6.1.3.2.  It was an isolated incident;

E2.A6.1.3.3.  The conditions that resulted in the behavior were largely beyond the person's control (e.g., loss of employment, a business downturn, unexpected medical emergency, or a death, divorce or separation);

E2.A6.1.3.4.  The person has received or is receiving counseling for the problem and there are clear indications that the problem is being resolved or is under control;

E2.A6.1.3.5.  The affluence resulted from a legal source; and

*DoDD 5220.6, January 2, 1992*

E2.A6.1.3.6.  The individual initiated a good-faith effort to repay overdue creditors or otherwise resolve debts.

*DoDD 5220.6, January 2, 1992*

E2.A7.  ATTACHMENT 7 TO ENCLOSURE 2

GUIDELINE G
Alcohol Consumption

E2.A7.1.1.  *The Concern:*  Excessive alcohol consumption often leads to the exercise of questionable judgment, unreliability, failure to control impulses, and increases the risk of unauthorized disclosure of classified information due to carelessness.

E2.A7.1.2.  Conditions that could raise a security concern and may be disqualifying include:

E2.A7.1.2.1.  Alcohol-related incidents away from work, such as driving while under the influence, fighting, child or spouse abuse, or other criminal incidents related to alcohol use;

E2.A7.1.2.2.  Alcohol-related incidents at work, such as reporting for work or duty in an intoxicated or impaired condition, or drinking on the job;

E2.A7.1.2.3.  Diagnosis by a credentialed medical professional *(e.g., physician, clinical psychologist, or psychiatrist)* of alcohol abuse or alcohol dependence;

E2.A7.1.2.4.  *Evaluation of alcohol abuse or alcohol dependence by a licensed clinical social worker who is a staff member of a recognized alcohol treatment program;*

E2.A7.1.2.5.  Habitual or binge consumption of alcohol to the point of impaired judgment;

E2.A7.1.2.6.  Consumption of alcohol, subsequent to a diagnosis of alcoholism by a credentialed medical professional and following completion of an alcohol rehabilitation program

E2.A7.1.3.  Conditions that could mitigate security concerns include:

E2.A7.1.3.1.  The alcohol related incidents do not indicate a pattern;

E2.A7.1.3.2.  The problem occurred a number of years ago and there is no indication of a recent problem;

*DoDD 5220.6, January 2, 1992*

E2.A7.1.3.3.  Positive changes in behavior supportive of sobriety;

E2.A7.1.3.4.  Following diagnosis of alcohol abuse or alcohol dependence, the individual has successfully completed inpatient or outpatient rehabilitation along with aftercare requirements, participates frequently in meetings of Alcoholics Anonymous or a similar organization, *has* abstained from alcohol for a period of at least 12 months, and received a favorable prognosis by a credentialed medical professional *or licensed clinical social worker who is a staff member of a recognized alcohol treatment program*.

*DoDD 5220.6, January 2, 1992*

E2.A8.  ATTACHMENT 8 TO ENCLOSURE 2

GUIDELINE H
Drug Involvement

E2.A8.1.1.  *The Concern:*

E2.A8.1.1.1.  Improper or illegal involvement with drugs, raises questions regarding an individual's willingness or ability to protect classified information.  Drug abuse or dependence may impair social or occupational functioning, increasing the risk of an unauthorized disclosure of classified information

E2.A8.1.1.2.  *Drugs are defined as mood and behavior-altering substances, and include:*

E2.A8.1.1.2.1.  *Drugs, materials, and other chemical compounds identified and listed in the Controlled Substances Act of 1970, as amended (e.g., marijuana or cannabis, depressants, narcotics, stimulants, and hallucinogens); and*

E2.A8.1.1.2.2.  *Inhalants and other similar substances,*

E2.A8.1.1.3.  *Drug abuse is the illegal use of a drug or use of a legal drug in a manner that deviates from approved medical direction.*

E2.A8.1.2.  Conditions that could raise a security concern and may be disqualifying include:

E2.A8.1.2.1.  Any drug abuse (see above definition);

E2.A8.1.2.2.  Illegal drug possession, including cultivation, processing, manufacture, purchase, sale, or distribution;

E2.A8.1.2.3.  *Diagnosis by a credentialed medical professional (e.g., physician, clinical psychologist, or psychiatrist) of drug abuse or drug dependence;*

E2.A8.1.2.4.  *Evaluation of drug abuse or drug dependence by a licensed clinical social worker who is a staff member of a recognized drug treatment program;*

E2.A8.1.2.5.  Failure to successfully complete a drug treatment program prescribed by a credentialed medical professional.  *Recent* drug involvement, especially following the granting of a security clearance, or an expressed intent not to

*DoDD 5220.6, January 2, 1992*

discontinue use, will *almost invariably* result in an unfavorable determination.

E2.A8.1.3.  Conditions that could mitigate security concerns include:

E2.A8.1.3.1.  The drug involvement was not recent;

E2.A8.1.3.2.  The drug involvement was an isolated or *aberrational* event;

E2.A8.1.3.3.  A demonstrated intent not to abuse any drugs in the future;

E2.A8.1.3.4.  Satisfactory completion of a *prescribed* drug treatment program, *including rehabilitation and aftercare requirements, without recurrence of abuse, and a favorable prognosis* by a credentialed medical professional.

*DoDD 5220.6, January 2, 1992*

E2.A9.  ATTACHMENT 9 TO ENCLOSURE 2

GUIDELINE I
Emotional, Mental, and Personality Disorders

E2.A9.1.1.  *The Concern:*  Emotional, mental, and personality disorders can cause a significant deficit in an individuals psychological, social and occupational functioning.  These disorders are of security concern because they may indicate a defect in judgment, reliability or stability.  *A credentialed mental health professional (e.g., clinical psychologist or psychiatrist), employed by, acceptable to or approved by the Government, should be utilized in evaluating potentially disqualifying and mitigating information fully and properly, and particularly for consultation with the individual's mental health care provider.*

E2.A9.1.2.  Conditions that could raise a security concern and may be disqualifying include:

E2.A9.1.2.1.  *An opinion* by a credentialed mental health professional that the individual has a *condition or treatment* that *may indicate* a defect in *judgment, reliability, or stability*;

E2.A9.1.2.2.  Information that suggests that an individual has failed to follow appropriate medical advice relating to treatment of a *condition*, e.g. failure to take prescribed medication;

E2.A9.1.2.3.  A pattern of high-risk, irresponsible, aggressive, anti-social or emotionally unstable behavior;

E2.A9.1.2.4.  Information that suggests that the individual's current behavior indicates a defect in his or her judgment or reliability.

E2.A9.1.3.  Conditions that could mitigate security concerns include:

E2.A9.1.3.1.  There is no indication of a current problem;

E2.A9.1.3.2.  Recent *opinion* by a credentialed mental health professional that an individual's previous emotional, mental, or personality disorder is cured, *under control* or in remission, and has a low probability of recurrence or exacerbation;

*DoDD 5220.6, January 2, 1992*

E2.A9.1.3.3.  The past emotional instability was a temporary condition (e.g., one caused by a death, illness, or marital breakup), the situation has been resolved, and the individual is no longer emotionally unstable.

*DoDD 5220.6, January 2, 1992*

E2.A10.  ATTACHMENT 10 TO ENCLOSURE 2

GUIDELINE J
Criminal Conduct

E2.A10.1.1.  *The Concern:*  A history or pattern of criminal activity creates doubt about a person's judgment, reliability and trustworthiness.

E2.A10.1.2.  Conditions that could raise a security concern and may be disqualifying include:

E2.A10.1.2.1.  *Allegations or admission of criminal conduct,* regardless of whether the person was formally charged;

E2.A10.1.2.2.  A single serious crime or multiple lesser offenses.

E2.A10.1.3.  Conditions that could mitigate security concerns include:

E2.A10.1.3.1.  The criminal behavior was not recent;

E2.A10.1.3.2.  The crime was an isolated incident;

E2.A10.1.3.3.  The person was pressured or coerced into committing the act and those pressures are no longer present in that person's life;

E2.A10.1.3.4.  The person did not voluntarily commit the act and/or the factors leading to the violation are not likely to recur;

E2.A10.1.3.5.  *Acquittal;*

E2.A10.1.3.6.  There is clear evidence of successful rehabilitation.

*DoDD 5220.6, January 2, 1992*

E2.A11.  ATTACHMENT 11 TO ENCLOSURE 2

GUIDELINE K
Security Violations

E2.A11.1.1.  *The Concern:*  Noncompliance with security regulations raises doubt about an individual's trustworthiness, willingness, and ability to safeguard classified information.

E2.A11.1.2.  Conditions that could raise a security concern and may be disqualifying include:

E2.A11.1.2.1.  Unauthorized disclosure of classified information;

E2.A11.1.2.2.  Violations that are deliberate or multiple or due to negligence.

E2.A11.1.3.  Conditions that could mitigate security concerns include actions that:

E2.A11.1.3.1.  Were inadvertent;

E2.A11.1.3.2.  Were isolated or infrequent;

E2.A11.1.3.3.  Were due to improper or inadequate training;

E2.A11.1.3.4.  Demonstrate a positive attitude towards the discharge of security responsibilities.

*DoDD 5220.6, January 2, 1992*

### E2.A12.  ATTACHMENT 12 TO ENCLOSURE 2

### GUIDELINE L
### Outside Activities

E2.A12.1.1.  *The Concern:*  Involvement in certain types of outside employment or activities is of security concern if it poses a conflict with an individual's security responsibilities and could create an increased risk of unauthorized disclosure of classified information.

E2.A12.1.2.  Conditions that could raise a security concern and may be disqualifying include *any service, whether compensated, volunteer, or employment with:*

E2.A12.1.2.1.  A foreign country;

E2.A12.1.2.2.  Any foreign national;

E2.A12.1.2.3.  A representative of any foreign interest;

E2.A12.1.2.4.  Any foreign, domestic, or international organization or person engaged in analysis, discussion, or publication of material on intelligence, defense, foreign affairs, or protected technology.

E2.A12.1.3.  Conditions that could mitigate security concerns include:

E2.A12.1.3.1.  Evaluation of the outside employment or activity indicates that it does not pose a conflict with an individual's security responsibilities;

E2.A12.1.3.2.  The individual terminates the employment or discontinues the activity upon being notified that it is in conflict with his or her security responsibilities.

*DoDD 5220.6, January 2, 1992*

### E2.A13.  ATTACHMENT 13 TO ENCLOSURE 2

### GUIDELINE M
#### Misuse of Information Technology Systems

E2.A13.1.1.  *The Concern:*  Noncompliance with rules, procedures, guidelines or regulations pertaining to information technology systems may raise security concerns about an individual's trustworthiness, willingness, and ability to properly protect classified systems, networks, and information.  Information Technology Systems include all related equipment used for the communication, transmission, processing, manipulation, and storage of classified or sensitive information.

E2.A13.1.2.  Conditions that could raise a security concern and may be disqualifying include:

E2.A13.1.2.1.  Illegal or unauthorized entry into any information technology system;

E2.A13.1.2.2.  Illegal or unauthorized modification, destruction, manipulation, or denial of access to information residing on an information technology system;

E2.A13.1.2.3.  Removal (or use) of hardware, software or media from any information technology system without authorization, when specifically prohibited by rules, procedures, guidelines or regulations;

E2.A13.1.2.4.  Introduction of hardware, software or media into any information technology system without authorization, when specifically prohibited by rules, procedures, guidelines or regulations;

E2.A13.1.3.  Conditions that could mitigate security concerns include:

E2.A13.1.3.1.  The misuse was not recent or significant;

E2.A13.1.3.2.  The conduct was unintentional or inadvertent;

E2.A13.1.3.3.  The introduction or removal of media was authorized;

E2.A13.1.3.4.  The misuse was an isolated event;

E2.A13.1.3.5.  The misuse was followed by a prompt, good faith effort to correct the situation.

E3.  ENCLOSURE 3

ADDITIONAL PROCEDURAL GUIDANCE

E3.1.1.  When the DISCO cannot affirmatively find that it is clearly consistent with the national interest to grant or continue a security clearance for an applicant, the case shall be promptly referred to the DOHA.

E3.1.2.  Upon referral, the DOHA shall make a prompt determination whether to grant or continue a security clearance, issue a statement of reasons (SOR) as to why it is not clearly consistent with the national interest to do so, or take interim actions, including but not limited to:

E3.1.2.1.  Direct further investigation.

E3.1.2.2.  Propound written interrogatories to the applicant or other persons with relevant information.

E3.1.2.3.  Requiring the applicant to undergo a medical evaluation by a DoD Psychiatric Consultant.

E3.1.2.4.  Interviewing the applicant.

E3.1.3.  An unfavorable clearance decision shall not be made unless the applicant has been provided with a written SOR that shall be as detailed and comprehensive as the national security permits.  A letter of instruction with the SOR shall explain that the applicant or Department Counsel may request a hearing.  It shall also explain the adverse consequences for failure to respond to the SOR within the prescribed time frame.

E3.1.4.  The applicant must submit a detailed written answer to the SOR under oath or affirmation that shall admit or deny each listed allegation.  A general denial or other similar answer is insufficient.  To be entitled to a hearing, the applicant must specifically request a hearing in his or her answer.  The answer must be received by the DOHA within 20 days from receipt of the SOR.  Requests for an extension of time to file an answer may be submitted to the Director, DOHA, or designee, who in turn may grant the extension only upon a showing of good cause.

E3.1.5.  If the applicant does not file a timely and responsive answer to the SOR, the Director, DOHA, or designee, may discontinue processing the case, deny issuance

of the requested security clearance, and direct the DISCO to revoke any security clearance held by the applicant.

E3.1.6.  Should review of the applicant's answer to the SOR indicate that allegations are unfounded, or evidence is insufficient for further processing, Department Counsel shall take such action as appropriate under the circumstances, including but not limited to withdrawal of the SOR and transmittal to the Director for notification of the DISCO for appropriate action.

E3.1.7.  If the applicant has not requested a hearing with his or her answer to the SOR and Department Counsel has not requested a hearing within 20 days of receipt of the applicant's answer, the case shall be assigned to the Administrative Judge for a clearance decision based on the written record.  Department Counsel shall provide the applicant with a copy of all relevant and material information that could be adduced at a hearing.  The applicant shall have 30 days from receipt of the information in which to submit a documentary response setting forth objections, rebuttal, extenuation, mitigation, or explanation, as appropriate.

E3.1.8.  If a hearing is requested by the applicant or Department Counsel, the case shall be assigned to the Administrative Judge for a clearance decision based on the hearing record.  Following issuance of a notice of hearing by the Administrative Judge, or designee, the applicant shall appear in person with or without counsel or a personal representative at a time and place designated by the notice of hearing.  The applicant shall have a reasonable amount of time to prepare his or her case.  The applicant shall be notified at least 15 days in advance of the time and place of the hearing, which generally shall be held at a location in the United States within a metropolitan area near the applicant's place of employment or residence.  A continuance may be granted by the Administrative Judge only for good cause.  Hearings may be held outside of the United States in NATO cases, or in other cases upon a finding of good cause by the Director, DOHA, or designee.

E3.1.9.  The Administrative Judge may require a pre-hearing conference.

E3.1.10.  The Administrative Judge may rule on questions on procedure, discovery, and evidence and shall conduct all proceedings in a fair, timely, and orderly manner.

E3.1.11.  Discovery by the applicant is limited to non-privileged documents and materials subject to control by the DOHA.  Discovery by Department Counsel after

issuance of an SOR may be granted by the Administrative Judge only upon a showing of good cause.

E3.1.12.  A hearing shall be open except when the applicant requests that it be closed, or when the Administrative Judge determines that there is a need to protect classified information or there is other good cause for keeping the proceeding closed. No inference shall be drawn as to the merits of a case on the basis of a request that the hearing be closed.

E3.1.13.  As far in advance as practical, Department Counsel and the applicant shall serve one another with a copy of any pleading, proposed documentary evidence, or other written communication to be submitted to the Administrative Judge.

E3.1.14.  Department Counsel is responsible for presenting witnesses and other evidence to establish facts alleged in the SOR that have been controverted.

E3.1.15.  The applicant is responsible for presenting witnesses and other evidence to rebut, explain, extenuate, or mitigate facts admitted by the applicant or proven by Department Counsel, and has the ultimate burden of persuasion as to obtaining a favorable clearance decision.

E3.1.16.  Witnesses shall be subject to cross-examination.

E3.1.17.  The SOR may be amended at the hearing by the Administrative Judge on his or her own motion, or upon motion by Department Counsel or the applicant, so as to render it in conformity with the evidence admitted or for other good cause.  When such amendments are made, the Administrative Judge may grant either party's request for such additional time as the Administrative Judge may deem appropriate for further preparation or other good cause.

E3.1.18.  The Administrative Judge hearing the case shall notify the applicant and all witnesses testifying that 18 U.S. C.  1001 (reference (c)) is applicable.

E3.1.19.  The Federal Rules of Evidence (28 U.S. C.  101 et  seq.  (reference (d)) shall serve as a guide.  Relevant and material evidence may be received subject to rebuttal, and technical rules of evidence may be relaxed, except as otherwise provided herein, to permit the development of a full and complete record.

E3.1.20.  Official records or evidence compiled or created in the regular course of business, other than DoD personnel background reports of investigation (ROI), may be received and considered by the Administrative Judge without authenticating witnesses,

provided that such information has been furnished by an investigative agency pursuant to its responsibilities in connection with assisting the Secretary of Defense, or the Department or Agency head concerned, to safeguard classified information within industry under E.O. 10865 (enclosure 1.).  An ROI may be received with an authenticating witness provided it is otherwise admissible under the Federal Rules of Evidence (28 U.S. C.  101 et seq. (reference (d)).

E3.1.21.  Records that cannot be inspected by the applicant because they are classified may be received and considered by the Administrative Judge, provided the GC, DoD, has:

E3.1.21.1.  Made a preliminary determination that such evidence appears to be relevant and material.

E3.1.21.2.  Determined that failure to receive and consider such evidence would be substantially harmful to the national security.

E3.1.22.  A written or oral statement adverse to the applicant on a controverted issue may be received and considered by the Administrative Judge without affording an opportunity to cross-examine the person making the statement orally, or in writing when justified by the circumstances, only in either of the following circumstances:

E3.1.22.1.  If the head of the Department or Agency supplying the statement certifies that the person who furnished the information is a confidential informant who has been engaged in obtaining intelligence information for the Government and that disclosure of his or her identity would be substantially harmful to the national interest; or

E3.1.22.2.  If the GC, DoD, has determined the statement concerned appears to be relevant, material, and reliable; failure to receive and consider the statement would be substantially harmful to the national security; and the person who furnished the information cannot appear to testify due to the following:

E3.1.22.2.1.  Death, severe illness, or similar cause, in which case the identity of the person and the information to be considered shall be made available to the applicant; or

E3.1.22.2.2.  Some other cause determined by the Secretary of Defense, or when appropriate by the Department or Agency head, to be good and sufficient.

E3.1.23.  Whenever evidence is received under items E3.1.21.  or E3.1.22., above,

the applicant shall be furnished with as comprehensive and detailed a summary of the information as the national security permits. The Administrative Judge and Appeal Board may make a clearance decision either favorable or unfavorable to the applicant based on such evidence after giving appropriate consideration to the fact that the applicant did not have an opportunity to confront such evidence, but any final determination adverse to the applicant shall be made only by the Secretary of Defense, or the Department or Agency head, based on a personal review of the case record.

E3.1.24. A verbatim transcript shall be made of the hearing. The applicant shall be furnished one copy of the transcript, less the exhibits, without cost.

E3.1.25. The Administrative Judge shall make a written clearance decision in a timely manner setting forth pertinent findings of fact, policies, and conclusions as to the allegations in the SOR, and whether it is clearly consistent with the national interest to grant or continue a security clearance for the applicant. The applicant and Department Counsel shall each be provided a copy of the clearance decision. In cases in which evidence is received under items E3.1.21. and E3.1.22., above, the Administrative Judge's written clearance decision may require deletions in the interest of national security.

E3.1.26. If the Administrative Judge decides that it is clearly consistent with the national interest for the applicant to be granted or to retain a security clearance, the DISCO shall be so notified by the Director, DOHA, or designee, when the clearance decision becomes final in accordance with item E3.1.36., below.

E3.1.27. If the Administrative Judge decides that it is not clearly consistent with the national interest for the applicant to be granted or to retain a security clearance, the Director, DOHA, or designee, shall expeditiously notify the DISCO, which shall in turn notify the applicant's employer of the denial or revocation of the applicant's security clearance. The letter forwarding the Administrative Judge's clearance decision to the applicant shall advise the applicant that these actions are being taken, and that the applicant may appeal the Administrative Judge's clearance decision.

E3.1.28. The applicant or Department Counsel may appeal the Administrative Judge's clearance decision by filing a written notice of appeal with the Appeal Board within 15 days after the date of the Administrative Judge's clearance decision. A notice of appeal received after 15 days from the date of the clearance decision shall not be accepted by the Appeal Board, or designated Board Member, except for good cause. A notice of cross-appeal may be filed with the Appeal Board within 10 days of receipt of the notice of appeal. An untimely cross appeal shall not be accepted by the

Appeal Board, or designated Board Member, except for good cause.

E3.1.29.  Upon receipt of a notice of appeal, the Appeal Board shall be provided the case record.  No new evidence shall be received or considered by the Appeal Board.

E3.1.30.  After filing a timely notice of appeal, a written appeal brief must be received by the Appeal Board within 45 days from the date of the Administrative Judge's clearance decision.  The appeal brief must state the specific issue or issues being raised, and cite specific portions of the case record supporting any alleged error.  A written reply brief, if any, must be filed within 20 days from receipt of the appeal brief.  A copy of any brief filed must be served upon the applicant or Department Counsel, as appropriate.

E3.1.31.  Requests for extension of time for submission of briefs may be submitted to the Appeal Board or designated Board Member.  A copy of any request for extension of time must be served on the opposing party at the time of submission.  The Appeal Board, or designated Board Member, shall be responsible for controlling the Appeal Board's docket, and may enter an order dismissing an appeal in an appropriate case or vacate such an order upon a showing of good cause.

E3.1.32.  The Appeal Board shall address the material issues raised by the parties to determine whether harmful error occurred.  Its scope of review shall be to determine whether or not:

E3.1.32.1.  The Administrative Judge's findings of fact are supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion in light of all the contrary evidence in the same record.  In making this review, the Appeal Board shall give deference to the credibility determinations of the Administrative Judge;

E3.1.32.2.  The Administrative Judge adhered to the procedures required by E.O. 10865 (enclosure 1.) and this Directive; or

E3.1.32.3.  The Administrative Judge's rulings or conclusions are arbitrary, capricious, or contrary to law.

E3.1.33.  The Appeal Board shall issue a written clearance decision addressing the material issues raised on appeal.  The Appeal Board shall have authority to:

E3.1.33.1.  Affirm the decision of the Administrative Judge;

*DoDD 5220.6, January 2, 1992*

E3.1.33.2.  Remand the case to an Administrative Judge to correct identified error.  If the case is remanded, the Appeal Board shall specify the action to be taken on remand; or

E3.1.33.3.  Reverse the decision of the Administrative Judge if correction of identified error mandates such action.

E3.1.34.  A copy of the Appeal Board's written clearance decision shall be provided to the parties.  In cases in which evidence was received under items E3.1.21. and E3.1.22., above, the Appeal Board's clearance decision may require deletions in the interest of national security.

E3.1.35.  Upon remand, the case file shall be assigned to an Administrative Judge for correction of error(s) in accordance with the Appeal Board's clearance decision.  The assigned Administrative Judge shall make a new clearance decision in the case after correcting the error(s) identified by the Appeal Board.  The Administrative Judge's clearance decision after remand shall be provided to the parties.  The clearance decision after remand may be appealed pursuant to items E3.1.28.  to E3.1.35., above.

E3.1.36.  A clearance decision shall be considered final when:

E3.1.36.1.  A security clearance is granted or continued pursuant to item E3.1.2., above;

E3.1.36.2.  No timely notice of appeal is filed;

E3.1.36.3.  No timely appeal brief is filed after a notice of appeal has been filed;

E3.1.36.4.  The appeal has been withdrawn;

E3.1.36.5.  When the Appeal Board affirms or reverses an Administrative Judge's clearance decision; or

E3.1.36.6.  When a decision has been made by the Secretary of Defense, or the Department or Agency head, under to item E3.1.23., above.  The Director, DOHA, or designee, shall notify the DISCO of all final clearance decisions.

E3.1.37.  An applicant whose security clearance has been finally denied or

revoked by the DOHA is barred from reapplication for 1 year from the date of the initial unfavorable clearance decision.

E3.1.38.  A reapplication for a security clearance must be made initially by the applicant's employer to the DISCO and is subject to the same processing requirements as those for a new security clearance application.  The applicant shall thereafter be advised he is responsible for providing the Director, DOHA, with a copy of any adverse clearance decision together with evidence that circumstances or conditions previously found against the applicant have been rectified or sufficiently mitigated to warrant reconsideration.

E3.1.39.  If the Director, DOHA, determines that reconsideration is warranted, the case shall be subject to this Directive for making a clearance decision.

E3.1.40.  If the Director, DOHA, determines that reconsideration is not warranted, the DOHA shall notify the applicant of this decision.  Such a decision is final and bars further reapplication for an additional one year period from the date of the decision rejecting the reapplication.

E3.1.41.  Nothing in this Directive is intended to give an applicant reapplying for a security clearance any greater rights than those applicable to any other applicant under this Directive.

E3.1.42.  An applicant may file a written petition, under oath or affirmation, for reimbursement of loss of earnings resulting from the suspension, revocation, or denial of his or her security clearance.  The petition for reimbursement must include as an attachment the favorable clearance decision and documentation supporting the reimbursement claim.  The Director, DOHA, or designee, may in his or her discretion require additional information from the petitioner.

E3.1.43.  Claims for reimbursement must be filed with the Director, DOHA, or designee, within 1 year after the date the security clearance is granted.  Department Counsel generally shall file a response within 60 days after receipt of applicant's petition for reimbursement and provide a copy thereof to the applicant.

E3.1.44.  Reimbursement is authorized only if the applicant demonstrates by clear and convincing evidence to the Director, DOHA, that all of the following conditions are met:

E3.1.44.1.  The suspension, denial, or revocation was the primary cause of the claimed pecuniary loss; and

E3.1.44.2.  The suspension, denial, or revocation was due to gross negligence of the Department of Defense at the time the action was taken, and not in any way by the applicant's failure or refusal to cooperate.

E3.1.45.  The amount of reimbursement shall not exceed the difference between the earnings of the applicant at the time of the suspension, revocation, or denial and the applicant's interim earnings, and further shall be subject to reasonable efforts on the part of the applicant to mitigate any loss of earnings.  No reimbursement shall be allowed for any period of undue delay resulting from the applicant's acts or failure to act.  Reimbursement is not authorized for loss of merit raises and general increases, loss of employment opportunities, counsel's fees, or other costs relating to proceedings under this Directive.

E3.1.46.  Claims approved by the Director, DOHA, shall be forwarded to the Department or Agency concerned for payment.  Any payment made in response to a claim for reimbursement shall be in full satisfaction of any further claim against the United States or any Federal Department or Agency, or any of its officers or employees.

E3.1.47.  Clearance decisions issued by Administrative Judges and the Appeal Board shall be indexed and made available in redacted form to the public.